PETER J. BURCHELL, APPELLANT, *v.* STEWART C. MARSH, ALEXANDER FREAR, AND WILLIAM M. ARBUCKLE.[*]

If an award is within the submission, and contains the honest decision of the arbitrators, after a full and fair hearing of the parties, a court of equity will not set it aside for error, either in law or fact.

In this case, one of the parties sued the other for debt, who, in his turn, claimed damages for the manner in which he was sued. The submission was broad enough to cover all these demands on either side.

One of the claims made by the party who was sued, was for damages for the violence of the agent of the creditors; and the referees heard evidence upon this subject. Even if this had been beyond the submission, there was nothing in the record to show that the arbitrators made any allowance for this violence and slanderous language.

The charges of fraud and corruption made in the bill are denied in the answer, and the award is not so outrageous as of itself to constitute conclusive evidence of fraud or corruption. Error of judgment in the arbitrators is not a sufficient ground for setting aside an award.

[*] Mr. Chief Justice TANEY and Mr. Justice WAYNE, did not sit in this cause.

This was an appeal from the circuit court of the United States for the district of Illinois.

The bill was filed by Marsh, Frear, and Arbuckle, to set aside an award made by arbitrators chosen by them upon the one part, and Burchell upon the other, to hear all matters of claim of either party, upon or against the other, in the law or in equity.

The facts in the case were these : —

There were two commercial firms in New York, carrying o.. business under the names of Marsh and Frear, and Alexander Frear and Co. The first was composed of Stewart C. Marsh and Alexander Frear; and the second, of Alexander Frear and William M. Arbuckle. Burchell was a retail country merchant, having a store at St. Charles, in Kane county, Illinois, and another store at Cherry Valley, in Winnebago county, Illinois. Burchell had been in the habit, for several years, of purchasing goods from the firms in New York, and of making payments on account.

In March, 1852, the two firms brought suits in the circuit court of the United States for Illinois, against Burchell, by summons. At April term, 1852, at Chicago, Burchell filed an affidavit for a continuance, stating that he could prove by absent witnesses that the debt was not due when the suit was brought in March, nor until the April following. Whereupon the plain-tiffs submitted to a nonsuit.

In May, 1852, the two firms renewed their suits, but filed the affidavits required by law, and commenced the suits by writs of *capias ad respondendum,* under which Burchell was arrested and held to bail. The amount claimed by Marsh and Freer was $12,000, and by Freer and Arbuckle, $2,014. These suits were brought by R. V. M. Cross, as agent and attorney for the plaintiffs.

In July, 1852, the court being held at Springfield, the causes were continued upon affidavit of the defendant.

In October, 1852, there was an agreement for a reference to arbitrators, which, however, was afterwards revoked by Freer.

In December, 1852, the parties agreed upon another award. The agreement recited the claims of the firms upon Burchell, and the suits, " by which the said Burchell claims to have sustained damages by reason of having been sued by said firms as aforesaid, and by reason of the doings of the said firms towards him." The agreement then proceeded thus : —

Now, therefore, in consideration of the premises, and to put an end to all further controversies, and for a full and final adjustment of all differences between them, this article of submission, made and entered into this 15th day of December, A. D. 1852, between Alexander Freer, william M. Arbuckle, and Stewart C. Marsh, of the one part, and Peter J. Burchell, of the other

part, witnesseth, that the said parties have agreed to and do hereby submit all demands, suits, claims, causes of action, controversies, and disputes between them, to the arbitrament, determination, and award of F. B. Mosley, Oliver M. Butler, and such other person as the said Mosley and Butler may select, who are within sixty days from the day of the date hereof, and on such day as they or a majority of them shall select, meet at St. Charles, Kane county, (of the time of which meeting notice shall be given to the said parties or their attorneys,) and the said arbitrators shall hear all matters of claim of either party upon or against the other, founded in law or equity. And the said award shall direct and determine what, if any thing, is due or owing from said Burchell to said firms, or what, if any thing, shall be due from either or both of said firms to the said Burchell, &c., &c.

Evidence was given before the arbitrators, of the accounts, of the credits, the institution of the suits, of the time when the goods were to be paid for, of Burchell's pecuniary condition, of the arrest under the *capias*, and bail, of the violent declarations of Cross, the agent of the plaintiffs, the opinions of witnesses, how much injury Burchell's credit had sustained by reason of the suits, &c., &c.

In February, 1853, the arbitrators awarded as follows, namely :

" First, that all claims, demands, controversies, and disputes, between the respective parties, or between the said Burchell and the firm of Marsh and Freer, and also between the firm of Alexander Freer and Co. and the said Burchell, should cease and be determined by the said award. Second, that as between Stewart C. Marsh and Alexander Freer (the firm of Marsh and Freer) and the said Burchell, that there was due from said firm of Marsh and Freer to the said Peter J. Burchell, the sum of one hundred dollars, which said sum they did direct that the said Marsh and Freer should pay in money to the said Peter J. Burchell, in one month from the date of said award. Third, as between Alexander Freer and William M. Arbuckle, (the firm of Alexander Freer and Co.,) that there was due from said firm of Alexander Freer and Co. to said Burchell, the sum of twenty-five dollars, which said sum they did direct that your orators, Alexander Freer and William M. Arbuckle, should pay in money to said Burchell, in one month from the date of the said award. Fourth, that the costs of said arbitration should be paid as follows : That the firms should pay all the costs which they had made or occasioned, and should also pay the said Burchell his costs expended in and about said arbitration.

In February, 1853, the firms filed a bill, on the equity side of the court, to set aside this award. The bill was answered, and

the cause came up, upon bill and answer, in May, 1853, when the court decreed that the award should in all things be vacated, annulled, and set aside; and that Burchell should absolutely refrain and desist from counting upon, or in any manner pleading said award, in any suit or proceeding, in law or equity.

Burchell appealed to this court.

It was argued by *Mr. Gillet,* for the appellant, and by *Mr. Carlisle* and *Mr. Washburne,* for the appellees.

*Mr. Gillet* made the following points:—

1. The arbitrators had full power to act upon all "demands, suits, claims, causes of action, controversies, and disputes between the parties."

2. Under this submission, the arbitrators were constituted by the parties sole judges of the facts and the law, and equity arising from them.

3. That an award is made in ignorance of the rights of the parties, and of the duties and powers of the arbitrators, is no ground for setting it aside.

4. A court of equity will only interfere to set aside an award on a voluntary submission, for corruption or improper conduct of the arbitrators; and on a hearing, upon bill and answer, when these are charged and denied, the award cannot be set aside.

5. Every thing is to be presumed and every legal intendment made in favor of an award.

6. Where the submission is general, the power to award costs is a necessary incident to the power of the arbitrators.

7. Where an award covers matters not submitted, but is good in other respects, such matters will be rejected as surplusage, and the residue of the award will be good.

8. Where the whole or a part of an award is not within the terms of the submission, the party can obtain redress at law, and a court of equity has no jurisdiction.

The counsel for the appellees stated the case as follows:—

The answer admits Burchell's indebtedness to the firm of Marsh and Freer, to the amount of $3,822, and interest, and to the firm of Freer and Co., $1,014.80, being less than the amounts claimed by them respectively in the bill; but no proof appears in the record to countervail the answer in this respect.

There is no pretence in the record of any debt (technically) by the appellees, or either of them, to Burchell; nor of any demand (in the largest sense) against them, or either of them, except such as may have accrued by reason of an alleged anticipation of the maturity of his debts to them respectively, and the alleged premature institution of suits against him thereon.

The award (as alleged and admitted *ubi supra*) was as follows:—

First. That all claims, demands, controversies, and disputes, between the respective parties, or between the said Burchell and the firm of Marsh and Freer, and also between the firm of Alexander Freer and Co. and the said Burchell, should cease, and be determined by the said award.

Second. That as between Marsh and Freer, and said Burchell, there was due from said firm to said Burchell the sum of $100; which sum should be paid, &c.

Third. That as between A. Freer and Co. and said Burchell, there was due from said firm to said Burchell, $25, to be paid, &c.

Fourth. That the appellees should pay the costs.

The case was heard on bill, answer, exhibits, and replication.

It is only necessary to read the bill and answers, to be persuaded of the gross injustice which has been done to the appellees.

But it is not contended that the court could exercise any power in the nature of appellate jurisdiction merely, to correct this injustice. It is admitted that the award must stand, unless it can be impeached upon some distinct and recognized ground of relief in equity.

For the appellees it is submitted:—

First. That their relief, if any, must be in equity; because, as will presently be shown, it is principally claimed upon matters *dehors* the award, and which, therefore, could not be taken advantage of at law. 2 Story's Eq. Jur. § 1452, and cases there cited; 2 Wils. 148; 2 Johns. Ch. R. 367; 8 East, 344; McCormick *v.* Gray, 13 How. 27.

2. The record shows a case of gross partiality and misconduct on the part of the arbitrators, and this is ground of relief in equity.

I. As to the law. 2 Story's Eq. Ju. § 1452; Herrick *v.* Blair, 1 Johns. C. R. 101; Walker *v.* Frobisher, 6 Ves. 70; Van Cortlandt *v.* Underhill, 17 Johns. R. 411, *per* Spencer, Ch. J.

II. As to the facts.

These appear upon the allegations of the bill, and the admissions of the answer in part; and in other part by the insufficient and evasive denials of the answer.

From all which it clearly appears, that no evidence whatever was offered to the arbitrators of the damages sustained by Burchell, "by reason of having been sued by said firms as aforesaid, or by reason of the doings of the said firms towards him." Evidence was received and heard, under objection by the appellees.

of certain offensive language and harsh proceedings, by one Cross, an attorney employed by the appellees for the collection of their debts against the appellant, and witnesses, who appear to have been certain bystanders for that purpose, were sworn that they " should think, judging from the evidence they had heard given before said arbitrators, that said Burchell had sustained damages by reason of being sued as aforesaid, and by the statements of said Cross, in injury to his business and credit, to the amount of $10,000."

Mr. Justice GRIER delivered the opinion of the court.

This case was submitted on bill and answer. The appellees, who were complainants below, pray the court to set aside an award made between the parties, as " fraudulent and void." The bill charges that " the award was made either from improper and corrupt motives, with the design of favoring said Burchell, or in ignorance of the rights of the parties to said submission, and of the duties and powers of the arbitrators who signed the said award."

The answer denies " that the arbitrators acted unjustly, or with partiality or ignorance, in making their award; but avers that they acted justly, fairly, and with a due consideration of the rights of the parties." This allegation of the answer must be taken to be true, unless it appears, from other facts admitted by it, that this conclusion or averment founded on them is incorrect.

In the consideration of this case, it will not be necessary to incumber it with a history of the facts charged and admitted or denied by the pleadings, except as they shall be incidentally noticed. The general principles, upon which courts of equity interfere to set aside awards, are too well settled by numerous decisions to admit of doubt. There are, it is true, some anomalous cases, which, depending on their peculiar circumstances, cannot be exactly reconciled with any general rule; but such cases can seldom be used as precedents.

Arbitrators are judges chosen by the parties to decide the matters submitted to them, finally and without appeal. As a mode of settling disputes, it should receive every encouragement from courts of equity. If the award is within the submission, and contains the honest decision of the arbitrators, after a full and fair hearing of the parties, a court of equity will not set it aside for error, either in law or fact. A contrary course would be a substitution of the judgment of the chancellor in place of the judges chosen by the parties, and would make an award the commencement, not the end, of litigation. In order, says Lord Thurlow, (Knox v. Symmonds, 1 Ves. Jr. 369,) " to induce the

court to interfere, there must be something more than an error of judgment, such as corruption in the arbitrator, or gross mistake, either apparent on the face of the award, or to be made out by evidence; but in case of mistake, it must be made out to the satisfaction of the arbitrator, and that if it had not happened, he should have made a different award."

Courts should be careful to avoid a wrong use of the word "mistake," and, by making it synonymous with mere error of judgment, assume to themselves an arbitrary power over awards. The same result would follow if the court should treat the arbitrators as guilty of corrupt partiality, merely because their award is not such an one as the chancellor would have given. We are all too prone, perhaps, to impute either weakness of intellect or corrupt motives to those who differ with us in opinion.

1. The first objection to the award in this case is, that it is not within the submission. But we are of opinion this objection is without foundation.

The submission recites that controversies and disputes had arisen between the firm of Marsh and Freer, and of Freer and Arbuckle, with Burchell. It states the controversies to have arisen from suits brought by said firms against Burchell, to recover certain debts claimed to be due by him to the firms, respectively, " and the said Burchell claims to have sustained damages by reason of having been sued by said firms and by reason of the doings of the said firms towards him." The parties, therefore, agreed to submit " all demands, suits, claims, causes of action, controversies, and disputes between them, to the arbitration and award of F. B. Mosley," &c., " who are to hear all matters of claim of either party, upon or against the other, in law or equity."

On the hearing, the arbitrators received evidence of the debts alleged to be due from Burchell to the two firms, and of the alleged oppressive and ruinous suits brought against him by one Cross, who acted as agent of the firms. The witnesses, in proving these transactions, were permitted to state certain slanderous language used by Cross in speaking to and of Burchell, charging him with dishonesty and perjury. When this testimony was offered, the complainants' counsel agreed that it might be received, subject to exceptions.

It has been argued, that because the arbitrators received evidence of the slanderous language used by Cross, that, therefore, they included in their award damages for his slanders, for which his principals would not be liable; and that, therefore, they had taken into consideration matters not contained in the submission. But the answer to this allegation is, that the record shows no admission or proof that the arbitrators allowed any damages

for the slanders of Cross.   Whether the complainants were liable, and how far they were justly answerable for the conduct of their agent, were questions of law and fact submitted to the arbitrators.    All these questions were fully argued before them by counsel.    Whether their decision on them was erroneous, does not appear.    The transactions which were testified to, with regard to the suits brought against Burchell, and whether they were oppressive, wrongful, and ruinous to him, was one of the very matters submitted to the arbitrators.    The words as well as the acts of Cross made part of the *res gestæ*, and could not well be severed in giving a history of them.    Every presumption is in favor of the validity of the award.    If it had stated an account, by which it appeared that the arbitrators had made a specific allowance of damages for the slanders of Cross, it would have been annulled, to that extent at least, as beyond the submission.    But it cannot be inferred that the arbitrators went beyond the submission, merely because they may have admitted illegal evidence about the subject-matter of it.

We are of opinion, therefore, that there is nothing on the record to show that the arbitrators, in making this award, exceeded their authority, or went beyond the limits of the submission.

2. The charges of fraud, corruption, or improper conduct in the arbitrators, as we have seen, are wholly denied by the answer, which must be assumed to be true, unless facts are admitted from which they are a necessary or legal inference.   We can see nothing in the admitted facts of the case from which any such inference can be justly made.    The damages allowed for the alleged oppression of Burchell, and the ruin of his business as a merchant, may seem large to some, while others may think the sum of four, or even five thousand dollars as no extravagant compensation for such injuries.    It may be admitted, that, on the facts appearing on the face of the record, this court would not have assessed damages to so large an amount, nor have divided them so arbitrarily between the parties; but we cannot say that the estimate of the arbitrators is so outrageous as of itself to constitute conclusive evidence of fraud or corruption.   Damages for injuries of this sort cannot be measured by any rules, nor can the court properly impute corruption to others, because they differ with them in their estimation of a matter which depends on discretion rather than calculation.    It is enough that the parties have agreed to trust the discretion and judgment of neighbors acquainted with them, and their relative standing and credit.    The admission of witnesses to prove their estimate of the damages (even if it had been in the face of the objection of counsel, and not by consent) may have

been an error in judgment, but it is no cause for setting aside the award; nor can the admission of illegal evidence, or taking the opinion of third persons, be alleged as a misbehavior in the arbitrators which will affect their award. If they have given their honest, incorrupt judgment on the subject-matters submitted to them, after a full and fair hearing of the parties, they are bound by it; and a court of chancery have no right to annul their award because it thinks it could have made a better.

In fine, we are of opinion that this record furnishes no evidence of corruption or misbehavior in the arbitrators, nor of "ignorance," (as charged in the bill,) or of any such mistake as would justify a court of chancery in annulling it.

The decree of the court below is therefore reversed, and the record remitted with directions to dismiss the bill of complaint, with costs, but without prejudice to any legal defence.

Mr. Justice McLEAN and Mr. Justice NELSON dissented.

Mr. Justice NELSON.

I do not agree to the judgment of the court in this case. I think the damages allowed against the complainants, by the arbitrators, are so extravagant, disproportioned, and gross, as to afford evidence of passion and prejudice, and justified the judgment of the court below, in setting aside the award. It is difficult, if not impossible, to see, upon any other ground, how between four and five thousand dollars should have been allowed against one of the firms in the submission, and but some one thousand dollars against the other, under the circumstances of the case.

## Order.

This cause came on to be heard on the transcript of the record from the circuit court of the United States for the district of Illinois, and was argued by counsel. On consideration whereof it is now here ordered, adjudged, and decreed by this court that the decree of the said circuit court in this cause be and the same is hereby reversed, with costs, and that this cause be and the same is hereby remanded to the circuit court, with directions to dismiss the bill of complaint, with costs, but without prejudice to any legal defence which the parties may have.