**COAST TRADING CO., INC.,**
**Plaintiff-Appellee,**

v.

**PACIFIC MOLASSES CO., etc.,**
**Defendant-Appellant.**

**No. 79–4347.**

United States Court of Appeals,
Ninth Circuit.

Argued March 3, 1981.

Submitted March 17, 1981.

Decided July 22, 1982.

Robert C. Shoemaker, Jr., Rex Armstrong, Lindsay, Hart, Neil & Weigler, Portland, Or., for defendant-appellant.

Norman L. Lindstedt, Lindstedt & Buono, Portland, Or., for plaintiff-appellee.

Before ANDERSON and CANBY, Circuit Judges, and CRAIG,* District Judge.

J. BLAINE ANDERSON, Circuit Judge:

Pacific Molasses Co., dba Berger & Plate, brought this appeal after the district court vacated the arbitrator's award and granted damages to Coast Trading Co. in their breach of contract action.

## I. BACKGROUND

This is a diversity action involving a contract between Coast, the buyer, and Berger & Plate, the seller. Coast was to buy 2200 bags of peas from Berger & Plate, delivery to be made FOB Portland or Seattle in October/November 1973. The parties are members of the Pacific Northwest Pea Growers and Dealers Association, Inc. (PNWPA), now known as the American Dry Pea & Lentil Association. The PNWPA promulgates trade rules under which most of the sales in the industry are conducted. Both parties cite to the Trade Rules and it is admitted the contract between them incorporated the Trade Rules.

The rules provide definitions for commonly used terms and establish courses of conduct. The rules also provide for dispute resolution in the form of arbitration.

## II. FACTS

In November 1973, Coast issued shipping instructions altering the original contract, requesting bulk shipment to Spokane. Berger & Plate rejected these instructions in December, and requested advance payment for the peas by issuing a sight draft on Coast's bank and a nonnegotiable warehouse receipt as "evidence of title." The parties disagreed whether a negotiable warehouse receipt was necessary as "evidence of title" under the Trade Rules before payment was required on the sight draft. When Coast refused to advance payment absent a negotiable receipt, Berger & Plate attempted to cancel the contract.

Coast issued new shipping instructions which conformed to the original contract. Berger & Plate rejected these shipping instructions because it had cancelled the contract. Coast bought other peas at the market price and, pursuant to Trade Rule 15(1)(b),[1] cancelled the contract, demanding that Berger & Plate pay the difference between the contract price and the market price on the date of cancellation. Coast requested arbitration when Berger & Plate refused to pay. The parties then entered a contract of arbitration, pursuant to the PNWPA Trade Rules, and submitted their dispute. The question agreed to be submitted was:

"2200 bags of Alaska Whole Green Peas was purchased by Coast Trading Company from Berger & Plate Company on July 6, 1973 at $12.75 per cwt FOB Dock Portland/Seattle for shipment Oc-

---

* The Honorable Walter E. Craig, Senior United States District Judge, District of Arizona, sitting by designation.

1. PNWPA Trade Rule 15 provides in part:
   "BREACH OF CONTRACT AND PROCEDURE
   A contract shall remain in force and effect for seller and buyer until both parties have completed their contractual duties, or until one or the other party shall give due notice in regard to breach or default of the contract.
   (1) DEFAULT OF SELLER
   It shall be the duty of the buyer to notify the seller in event of breach of contract, and failure to provide such notice shall indicate that the contract is still in force and effect. Within three (3) days the buyer shall thereafter notify the seller which of the following rights he intends to exercise:
   (a) to amend or to cancel those portions of the contract upon which there has been a default, without penalty to seller, in order that seller may thereafter comply with the remainder of the contract, or
   (b) to cancel the contract and require seller to pay the difference between the contract price and the fair market price on the date of cancellation."

tober/November. Seller did not meet shipping obligations, did not furnish negotiable receipt, and contract was cancelled by buyer and an invoice was issued for difference in price between $12.75 and $33.50."

The case was submitted on written evidence. The panel found the buyer had originally issued improper shipping instructions, but the instructions did not constitute breach of the contract. The arbitration panel also found the nonnegotiable warehouse storage receipts were not "evidence of title" and that the seller was "negligent in not promptly notifying the buyer of the seller's ·inability to meet shipping instructions." Arbitration Case, decision of the panel on June 28, 1974, vol. 1 CR # 4, Exhibit B. The panel, instead of granting Coast the $45,650.00 in damages it sought, concluded that the contract should be extended for delivery in October/November 1974 at the contract price plus interest from December 1973 through September 1974.

Coast appealed this decision to the Arbitration Appeals Committee which accepted the panel's decision, except for the award. In March 1975, the committee ruled point No. 4 should be changed to read:

"Since the substitute delivery date has passed [Oct./Nov. 1974], the ... Committee finds the delivery date [should] be extended to April 5, 1975 and that Coast be allowed interest of 12% per annum on $45,650 from December 27, 1973 to July 11, 1974." Vol. 1 CR # 4, Exhibit C.

Coast then filed the present action in the district court to vacate the arbitration committee's decision. The court ruled the award amounted to an arbitrary extension of the contract after finding the seller at fault and, as a result, went "beyond the scope of the submission and is an arbitrary and irrational finding." Vol. 1 CR # 33, p. 8. A federal magistrate then tried Coast's claim, finding Berger & Plate had wrong-

fully repudiated the contract and was liable to Coast in the sum of $45,650 plus interest in damages and $21,295 in attorney fees plus costs of the action. Excerpts of Record, Magistrate Opinion, pp. 367–8.

## III. DISCUSSION

The inherent nature of arbitration is a consensual agreement of the parties to substitute a final and binding judgment of an impartial entity for the judgment of the court. The arbitration award is binding and enforceable unless the district court finds grounds to vacate it in 43 Stat. 885, 9 U.S.C. § 10, or grounds to modify or correct it in 9 U.S.C. § 11.[2] The grounds listed in 9 U.S.C. § 10 for vacating the award are: (1) when the award was procured by corruption, fraud or undue means, (2) when there was partiality or corruption in the arbitrators, (3) when the arbitrators were guilty of misconduct in the arbitration proceedings, or (4) when the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

The Supreme Court in *United Steelworkers of America v. Warrier & Gulf Nav. Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), discussed the differences and similarities between commercial and labor arbitration cases. In commercial cases, arbitration is used as a substitute for litigation. *Id.*, 363 U.S. at 578, 80 S.Ct. at 1350, 4 L.Ed.2d at 1415. Yet, even here, the arbitrator is confined to the interpretation and application of the parties' agreement. A companion case, *United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), although speaking in the labor dispute context, states, an arbitrator "... does not sit to dispense his own brand of industrial justice... [h]is award is legitimate only so long as it draws its essence from the ... agreement." *Id.*, 363 U.S. at

---

**2.** There has developed a non-statutory addition to the power of courts to vacate or modify arbitrator's awards. *See Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953); *San Martine Compania De Navegacion v. Saguenay*

*Terminals Ltd.*, 293 F.2d 796 (9th Cir. 1961), discussing "manifest disregard of the law." The parties have not argued this principle and, accordingly, it is not here discussed.

597, 80 S.Ct. at 1361, 4 L.Ed.2d at 1428; *La Mirada Trucking v. Teamsters Local Union 166*, 538 F.2d 286, 288 (9th Cir. 1976), *cert. denied*, 429 U.S. 1062, 97 S.Ct. 787, 50 L.Ed.2d 778 (1977) (where award exceeds the submission and does not draw from the agreement, the award is held invalid).

Berger & Plate argues the dispute was submitted to the arbitration panel, the panel considered the arguments of the parties, and concluded by interpreting the contract to allow for an extension of delivery. Since construction of the agreement is for the arbitrators, Berger & Plate contends courts should not be allowed to look at the merits of the award, even if the arbitrators make errors of law or fact.

■ The rule is, though the "arbitrators' view of the law might be open to serious question, . . . [an award] which is one within the terms of the submission, will not be set aside by a court for error either in law or fact," *San Martine*, 293 F.2d at 800, "if the award contains the honest decision of the arbitrators, after a full and fair hearing of the parties." *Burchell v. Marsh*, 17 How. 344, 58 U.S. 344, 349, 15 L.Ed. 96, 99 (1854).

■ Although the law is the same, the facts here differ from those in *San Martine* where we affirmed the arbitration award. We hold the arbitration award here is invalid. We affirm the district court because the arbitrators exceeded the authority given them by the consent of the parties. The arbitration panel's authority comes from both the initial purchase agreement between Coast and Berger & Plate and the contract for arbitration drawn up to submit the case to the arbitrators.

The PNWPA Trade Rules were a part of the purchase agreement between these parties. Rule 15 provides both procedures and remedies in the event of breach by either the buyer or seller. On default of the seller, the buyer must notify the seller and then may either amend the contract so the seller may comply with the remainder of the contract, or the buyer may cancel the contract and require the seller pay damages. *See* footnote 1. The submission statement recited facts indicating the seller's breach, the buyer's cancellation of the contract and notice to the seller requesting damages for the difference between the contract price and the market price on the date of cancellation.

The submission agreement, though drafted after the dispute, did not modify or amend the original contract and the application of the Trade Rules. In *San Martine* a supplemental arbitration agreement recited a number of events and concluded with "all-inclusive terms that the agreement [would] furnish a complete answer to the contention that the only damages authorized were those arising from a breach or violation of the charter party. [Submitted to the arbitrators were] all claims of either party against the other as a result of 'the actions and positions which they respectively took thereafter.'" *San Martine*, 293 F.2d at 799.

■ We voice no opinion on the result if the parties had contracted for other relief at the time they entered the purchase agreement or in the submission contract. Because the inherent nature of arbitration as a method of dispute resolution involves the agreement of the parties, we vacate this arbitration award as being contrary to remedies provided in the contract and as beyond the authority of the arbitrators under the submission. We emphasize it is not for the courts to examine the merits of an award, but the award will not be shielded from judicial scrutiny intended to insure that the award is grounded on the agreement of the parties and the issues they present for resolution. *See Totem Marine Tug & Barge, Inc. v. North American Towing, Inc.*, 607 F.2d 649, 651–52 (5th Cir. 1979); (improper extension of arbitration submission).

■ In affirming the district court, vacating the arbitration award, we uphold the award of the magistrate in the form of damages plus interest, attorney fees and costs. Vol. 3, CR # 90. Coast also seeks attorneys' fees and costs in this appeal. We find the provision in the purchase order authorizing reasonable attorneys fees to be

paid the buyer, is applicable here and remand to the district court to determine such fees as are appropriate in pursuing this appeal.

## IV. CONCLUSION

We find the award exceeds the authority granted the arbitrators by the agreement of these parties and was appropriately vacated by the district court. Damages and costs awarded Coast by the magistrate were not improperly granted.

Accordingly, we AFFIRM the judgment below and REMAND the question of reasonable attorneys fees in this appeal.